J-A14031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v.  :
:
:
:
CHARLES JUNIOR WESTFALL  :
:
Appellant  :  No. 871 MDA 2021

Appeal from the Judgment of Sentence Entered April 9, 2021
In the Court of Common Pleas of Union County Criminal Division at
No(s):  CP-60-CR-0000010-2019

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 14, 2022**

Appellant, Charles Junior Westfall, appeals from the judgment of sentence entered in the Court of Common Pleas of Union County following his conviction by a jury on the charges of rape of a child, statutory sexual assault, aggravated indecent assault (victim less than 13 years old), and indecent assault (person less than 13 years old).[1]  After a careful review, we affirm.

The relevant facts and procedural history are as follows: On December 10, 2018, the Commonwealth filed a complaint presenting various charges against Appellant in connection with incidents occurring between November 1, 2018, and November 10, 2018, as to his stepdaughter, ten-year-old D.M.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(c), 3122.1(b), 3125(a)(7), and 3126(a)(7), respectively.

On December 2 and 3, 2019, the trial court held a jury trial. However, at the conclusion of the trial, the jury was "hopelessly deadlocked," and thus, the trial court declared a mistrial. N.T., 12/3/19, at 141.

The trial court scheduled jury selection for Appellant's retrial on April 1, 2020, and then on July 20, 2020; however, both proceedings were cancelled due to the Judicial Emergency declared in connection with the COVID-19 pandemic. On October 19, 2020, a new jury was selected, and on January 11 and 12, 2021, Appellant, who was represented by counsel, appeared for a second jury trial.

At the trial, Casey Snook, who is a fifth-grade teacher, testified that D.M. was a student in her classroom. In early November of 2018, two other students, B.M. and M.S., reported to Ms. Snook that D.M. allegedly told them that "she and her dad do things that only married couples do." N.T., 1/11/21, at 29. Ms. Snook became concerned and spoke privately with D.M., who told Ms. Snook that Appellant "touches her and he inserts things." *Id.* at 30. D.M. reported to Ms. Snook that "she's a Christian and he just doesn't know the things that I like and don't like." *Id.* In response, Ms. Snook contacted Childline to report her concerns. *Id.*

D.M., who was twelve years old at the time of trial, confirmed that, when she was ten years old, Ms. Snook was her teacher. *Id.* at 40-41. She also confirmed that, in November of 2018, she told her friends, B.M. and M.S., to

pray for her because of issues she was having with Appellant, who was her stepfather. *Id.* at 42.

D.M. testified that when her mother was not at home Appellant would "ask to play." *Id.* at 43. She explained he would instruct her to take off her clothes while he took off his pants. *Id.* at 44. He would then insert his penis into her vagina. *Id.* at 45. Appellant instructed D.M. not to tell anyone about the incidents, and he told her she would "get in trouble" if she told anyone. *Id.* at 46. D.M. testified she told her friends about the activity because she "didn't want it to happen anymore." *Id.* at 47.

D.M.'s mother confirmed she was married to Appellant during November of 2018; however, she has since divorced him. *Id.* at 72-73. D.M.'s mother testified that, on many occasions, including in November of 2018, she ran errands and left D.M. at the house alone with Appellant. *Id.* at 74-75. She noted Appellant moved out of the house on November 10, 2018, after D.M. reported Appellant's abuse to her teacher. *Id.* at 75-76.

Rachel Gordner, R.N., testified she is a sexual assault nurse examiner, and she examined D.M. on November 10, 2018. *Id.* at 91. She observed redness in D.M.'s external vaginal area, as well in her perineum, and she discovered secretions. *Id.* D.M. reported "tenderness in these areas," which is "not normal." *Id.* at 92. Nurse Gordner testified that D.M. told her Appellant puts his penis into her vagina, and afterwards, "she is very wet down

there and it hurts." *Id.* at 93. D.M. reported "this [has been] happening once or twice a week and has been going on for a while." *Id.*

Jillian Scola, a forensic DNA scientist with the Pennsylvania State Police, testified she was given various swabs to test. *Id.* at 101. She noted there was an insufficient quantity of DNA on the items, so Appellant could not be excluded or included as a contributor. *Id.* at 102.

Kelsey Gober, a forensic scientist with the Pennsylvania State Police, testified she conducted chemical testing on swabs provided to her in this case from Nurse Gordner's examination of D.M. *Id.* at 108. She found the "presence of seminal material on the external genitalia swabs; however, no spermatozoa were identified." *Id.*

Pat J. Bruno, M.D., testified "it is very unusual to find any physical findings of [sexual abuse] in children." *Id.* at 120. He testified he examined D.M. on November 15, 2018, which was nine days after the last reported incident of sexual abuse. *Id.* He noted D.M. reported no pain or discomfort when he conducted the examination. *Id.* at 123.

Police Officer Jackson Stroup testified he was the lead investigator in the instant case, and on November 15, 2018, he interviewed Appellant, who reported he was never alone with D.M. and he never had "any playtime with her." *Id.* at 133.

Stacey Brightbill, a forensic interviewer for the CAC in Sunbury, testified she interviewed D.M. "right after the alleged incident arose." N.T., 1/12/21,

at 22. She testified D.M. reported Appellant would take her into the bedroom and ask her if she wanted to play. *Id.* at 29. She confirmed D.M. reported Appellant put his penis into her vagina. *Id.* at 25.

Appellant did not testify; however, D.M.'s mother was recalled to the stand, and the defense presented her as a witness as on cross-examination. She confirmed she and Appellant purchased a mobile home together, as well as vehicles and cell phones while they were married. *Id.* at 49-51. She testified Appellant received money after one of the vehicles was sold. *Id.*

At the conclusion of the trial, the jury convicted Appellant of the offenses indicated *supra*. On April 9, 2021, the trial court sentenced Appellant to an aggregate of nineteen years to thirty-eight years in prison. Appellant filed a timely post-sentence motion, which the trial court denied, and this timely appeal followed. On July 9, 2021, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement,[2] Appellant timely complied, and the trial court filed a responsive Rule 1925(a) opinion on August 19, 2021.

On appeal, Appellant sets forth the following issues in his "Statement of the Questions Involved" (verbatim):

---

[2] We note the trial court specified in its Rule 1925(b) order that Appellant had twenty-one days to file of record and serve on the trial court judge a Rule 1925(b) statement, and any issue not raised therein would be deemed waived. Thus, the trial court's order complied with Pa.R.A.P. 1925(b)(c). Further, the certified docket entries reveal notice of the order was properly served on Appellant's counsel via first class mail on July 9, 2021. *See* Pa.R.Crim.P. 114(C)(2)(c) (indicating docket entries shall include the date of service of trial court orders).

I. Whether the trial court violated the *ex post facto* clause by applying the amendment to 3104(b) to include "prior sexual victimization" which was not enacted until after charges had been filed against the Defendant and the denial of the 3104(b) evidence was a change in the rule of procedure which substantially disadvantaged the Defendant?

II. Whether the trial court erred/abused its discretion by denying the Defendant the ability to present an alternative defense as [to] why the child would make accusations [against] him of sexual assault?

III. Whether the trial court violated the Defendant's Sixth and Fourteenth Amendment Rights by suppressing evidence and limiting Defendant's ability to cross examine Commonwealth witnesses?

IV. Whether the trial court erred/abused its discretion to deny Defendant's witnesses and evidence under the Rape Shield, where any prejudice was far less than probative value?

V. Whether the trial court erred/abused its discretion in denying indigent Defendant an expert witness to assist with scientific evidence?

VI. Whether the trial court erred/abused its discretion by denying the Defendant's self-authenticating expert document based on the Rape Shield?

VII. Whether the trial court erred/abused its discretion by submitting redacted transcripts to the jury of Defendant's interview with police?

VIII. Whether the trial court erred/abused its discretion by permitting jurors access to the redacted transcript during jury deliberations?

IX. Was the evidence sufficient to sustain the convictions of the Defendant for rape of a child, statutory sexual assault, aggravated indecent assault, and indecent assault of person less than thirteen years old for the following reasons:

    i. Victim testified that Defendant was wearing underwear and therefore penetration could not have occurred as required for rape of a child.

    ii. On count 3, the evidence was not sufficient to show that sexual intercourse had occurred.

iii. On count 5, the evidence was not sufficient to show that penetration occurred.

iv. On count 7, the evidence was not sufficient to show their [*sic*] was a touching of the Defendant's intimate parts to the victim's intimate parts.

Appellant's Brief at 14-15 (suggested answers omitted).[3]

In his first issue, Appellant contends the trial court violated the *ex post facto* clause when it applied the amendment to the Rape Shield Law, 18 Pa.C.S.A. § 3104(b), to his trial despite Appellant's charges being filed more than six months prior to the effective date of the amendment. Specifically, Appellant claims evidence of "prior sexual victimization" should have been ruled admissible at his jury trial since, under the pre-amended version of Section 3104(b), which was in effect when the charges were filed against him, such evidence was admissible if relevant.

Initially, we note Appellant has not specified what evidence the trial court allegedly excluded under the Rape Shield Law. Appellant contends generally that the trial court's application of Section 3104(b) "substantially disadvantaged [Appellant's] ability to cross-examine witnesses and present evidence." Appellant's Brief at 25 (citing Trial Transcript, 12/2/19, pg. 2-13).

_____

[3] We have renumbered Appellant's issues so that they correspond with the argument portions of his brief.

Appellant has not identified precisely which witnesses he was allegedly unable to effectively cross-examine[4] or what evidence he was allegedly unable to present. In any event, we note the transcript to which Appellant directs our attention is regarding his first jury trial, which resulted in a mistrial. Appellant has not directed our attention to any relevant rulings regarding his second jury trial, which occurred on January 11 and 12, 2021.

Moreover, Appellant baldly asserts "[t]he redaction of [Appellant's] interview included clearly relevant discussion that, but not for the 3104(b) amendment, would have been admissible in this case." Appellant's Brief at 26. However, Appellant has not specified what interview to which he is referring or what portions of allegedly admissible evidence were redacted by the trial court.

It is well-settled that the failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119. *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa.Super. 2007) (*en banc*) (citation omitted). "[A]rguments which are not appropriately developed are waived." *Lackner v. Glosser*, 892 A.2d 21, 29–30 (Pa.Super. 2006) (citations omitted). "When issues are not properly raised and developed in

---

[4] We note the scope of cross-examination is within the sound discretion of the trial court, and we reverse only for an abuse of discretion. *See Commonwealth v. Largaespada*, 184 A.3d 1002, 1009 (Pa.Super. 2018). In exercising this discretion, the trial court may limit cross-examination due to concerns that the matter is collateral, would likely confuse or mislead the jury, or would waste time. *See id.*

briefs, or when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof." **Commonwealth v. Maris,** 629 A.2d 1014, 1017 (Pa.Super. 1993). It is not this Court's duty to scour the record and develop issues for an appellant. **See id.**

Here, as to his first issue, Appellant baldly asserts the trial court violated the *ex post facto* clause by excluding evidence of "prior sexual victimization." Appellant's Brief at 25. However, he does not develop his argument or cite to the appropriate portions of the record pursuant to Pa.R.A.P. 2119(a)-(c).

Simply put, assuming the pre-amended version of Section 3104(b) is applicable to Appellant's trial, and application of the amended version would constitute an *ex post facto* violation as alleged by Appellant,[5] we are unable to discern from Appellant's brief what evidence or cross-examination the trial court allegedly excluded so as to determine whether there was any *ex post facto* violation or resulting prejudice. Appellant's Brief at 26. The defect in Appellant's brief precludes us from conducting meaningful appellate review of his first issue. **In re W.H.**, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) ("[W]here

---

[5] We note the trial court concluded application of the amended version of Section 3104(b) did not constitute an *ex post facto* violation. Specifically, the trial court indicated "the amendments to the Rape Shield statute did not create a new exclusion, but merely made more explicit the types of testimony that were covered by the statute." Trial Court Opinion, filed 8/19/21, at 3. On appeal, Appellant does not provide any analysis or citation to authority regarding the interpretation of the Rape Shield statute or its amendments. We note the sole authority cited by Appellant pertains to the general standards regarding *ex post facto* laws. **See** Appellant's Brief at 25-26.

an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review that claim is waived."). Thus, we find Appellant's issue to be waived.

In his second issue, Appellant contends the trial court erred in denying him the ability to present an alternate defense as to why D.M. would make accusations of sexual assault against him.

Initially, we note the Commonwealth advocates for this Court to find the issue waived under Pa.R.A.P. 1925(b). **See** Commonwealth's Brief at 13-15. Further, the trial court suggests this Court should deem the issue to be waived under Pa.R.A.P. 1925(b). Specifically, the trial court indicated in its opinion that Appellant's issue was vague and did not provide specificity as to how the trial court allegedly denied Appellant the ability to present an alternate defense or the contents of the alleged alternate defense.

Thus, the trial court indicated "[Appellant] claims in his [Rule 1925(b) statement] that the court denied his ability to present an alternative defense concerning why the child would accuse hi[m] of sexual assault. The court is unable to address [the] issue because [Appellant] does not say how the court did this." Trial Court Opinion, filed 8/19/21, at 3.

It is well-settled that an appellant's court-ordered Rule 1925(b) statement must concisely identify each error with sufficient detail to identify the issue to be raised for the judge. Pa.R.A.P. 1925(b)(4)(ii). Further, any

issue not included in the Rule 1925(b) statement, or raised in accordance with the provisions of (b)(4) of Rule 1925, are deemed waived. Pa.R.A.P. 1925(b)((4)(vii).  A Rule 1925(b) statement that is not specific enough for the trial court to identify and address the issue the appellant wishes to raise on appeal may result in waiver. ***Commonwealth v. Reeves***, 907 A.2d 1 (Pa.Super. 2006).

> When a court has to guess what issue an appellant is appealing, that is not enough for meaningful review.  When an appellant fails adequately to identify in a concise manner the issues sought to be pursed on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to th[e] issue. In other words, a Concise Statement which is too vague to allow the court to identify the issue[] raised on appeal is the functional equivalent of no Concise Statement[.]

***Id.*** at 2 (citation omitted).

Here, Appellant presented the following issue in his Rule 1925(b) Statement: "Whether the trial court erred/abused its discretion by denying the Defendant the ability to present an alternative defense as why [*sic*] the child would make accusations him [*sic*] of sexual assault?" Appellant's Pa.R.A.P. 1925(b) Statement, filed 7/29/21, at ¶ 3. This vague statement prevented the trial court from meaningfully reviewing the claim in its Rule 1925(a) Opinion, and thus, we find the issue to be waived on this basis. ***See Reeves***, ***supra***.

In any event, we note Appellant attempts to refine his claim in his appellate brief and specifies he should have been permitted to raise the defense that D.M. lied because she harbored a grudge against Appellant since

- 11 -

he allegedly caught D.M. and her brother "fooling around," and Appellant told D.M.'s mother. Appellant contends "[i]n **Commonwealth v. Rodgers**, this [C]ourt addressed a potential situation like [Appellant's case]." Appellant's Brief at 27. He further contends this Court has applied "rare cases like [**Rodgers**] in **Comm v. Wall**[.]" Appellant's Brief at 28.

However, Appellant has not provided this Court with the citations to **Rodgers** or **Wall**, and he has not otherwise developed his claim that he "was not permitted to raise this defense at trial." **Id.** at 27. Thus, we find this issue to be waived on this basis as well. **See** Pa.R.A.P. 2119(a) (indicating arguments shall be supported with discussion and citation of authorities deemed relevant); Pa.R.A.P. 126 (discussing the proper citation of authorities).

In his third issue, Appellant contends the trial court violated his Sixth and Fourteenth Amendment rights by suppressing evidence and limiting Appellant's ability to cross-examine Commonwealth witnesses.

Initially, we note the Commonwealth advocates for this Court to find the issue waived under Pa.R.A.P. 1925(b). **See** Commonwealth's Brief at 17-19. Further, the trial court suggests this Court should deem the issue to be waived under Pa.R.A.P. 1925(b). Specifically, the trial court indicated in its opinion:

> [Appellant] claims that [the trial] court violated his constitutional rights by suppressing evidence and limiting [Appellant's] ability to cross-examine witnesses. Unfortunately, the court cannot address this issue because [Appellant] has not specified what evidence was suppressed or how the court limited counsel's ability to cross-examine witnesses.

Trial Court Opinion, filed 8/19/21, at 2.

Here, Appellant presented the following issue in his Rule 1925(b) statement: "Whether the trial court violated the Defendant's Sixth and Fourteenth Amendment Rights by suppressing evidence and limiting Defendant [*sic*] ability to cross-examine Commonwealth's [*sic*] witnesses?" Appellant's Pa.R.A.P. 1925(b) Statement, filed 7/29/21, at ¶ 1. We agree with the trial court that the issue is vague in that it does not identify what evidence the trial court allegedly suppressed, how the trial court allegedly limited cross-examination, or which witnesses the trial court allegedly limited during cross-examination. Appellant's vague issue prevented the trial court from meaningfully reviewing the claim in its Rule 1925(a) Opinion. **See Reeves**, **supra**.

In any event, we note Appellant attempts to refine his claim in his appellate brief and specifies he was improperly limited in his cross-examination of D.M.'s mother. In this vein, he alleges:

> [D.M.'s mother] made false statements under oath. During D.M.'s interview with Officer Stroup, [D.M.'s mother] stated that she had never had conversations regarding sex with D.M. [D.M.'s mother] would state that due to the shock of never having experienced something like this before, she did not immediately take her child to the hospital.
>
> Due to evidence specifically sought out in discovery, D.M. would have a several day [*sic*] evaluation regarding sexual abuse allegations on D.M.'s oldest brother, A.R. In the documentation, [D.M.'s mother] states that D.M. had previously disclosed that she was molested by her biological father[.]

- 13 -

When [D.M.'s mother] was asked point blank whether she was shocked because this is the first time "she is finding out the person she married is molesting her daughter," Trial Transcript, 12/10/21, p. 86, [s]he stated, "yes." *Id.* This statement cannot be true according to [D.M.'s mother's] prior statements. D.M. disclosed abuse to her by her biological father. D.M. would not make this allegation during her interview but did disclose it to her mother. Trial Transcript, 12/10/21, p. 4.

Appellant's Brief at 29-30.

Initially, we note that, in developing his claim that he was limited in his cross-examination of D.M.'s mother and/or in presenting evidence, Appellant directs our attention to "Trial Transcript, 12/10/21." *Id* To the extent Appellant is again directing our attention to his first jury trial, which occurred from December 2-3, 2019, and resulted in a mistrial, we find he is not entitled to relief.

To the extent Appellant is directing our attention to his second jury trial, which occurred from January 11-12, 2021, we conclude Appellant's claim is meritless. Relevantly, during defense counsel's cross-examination of D.M.'s mother, the following exchange occurred:

Q: And the reason you didn't go to the hospital is because you were so shocked by what happened, by these allegations, right?

A: I really didn't—I didn't know what to do, how to—taking it in. I didn't know what to do. I mean I just found out that the person that I was supposed to be married to was raping my daughter. I was in shock.

Q: That's the first time that ever happened to you?

A: As far as him or as far as what are you asking?

Q: I am asking, you said, I was still in shock because I just found out that the person I'm married to is allegedly raping my daughter.

- 14 -

A: Yes.

**Q: I asked you, first time?**

**A: Yes.**

[DEFENSE COUNSEL]: Your Honor, can we approach?

THE COURT: Sure.

(Discussion occurred at sidebar as follows):

[DEFENSE COUNSEL]: Your Honor, can we go in the jury room?

THE COURT: Let's go in the jury room.

(Discussion occurred in the jury room as follows):

[DEFENSE COUNSEL]: Your Honor, I wanted to have this here because I didn't want the Jury to hear it. I just want to point out that it's my position that she's committing perjury because her—this is not the first time that this has been alleged. [D.M.'s] actual biological father—[D.M.] made allegations that her mom's aware of that he molested her.

THE COURT: Your question was related to whether [Appellant] had molested her, not anybody else. You were—

[DEFENSE COUSEL]: So I'm trying to dance on—I don't want to go past that, Your Honor. That's what I'm trying to –

THE COURT: Well, one of the problems you face is that your questioning in my opinion is atrocious or it's designed to be cagey and wishy-washy so you can argue anything you want. On this specific issue you asked, was it the first time, and she's talking about my husband, the guy I'm supposed to be with, yadda, yadda, yadda, is raping my daughter. So, you didn't ask her, well, were allegations raised about a father, her natural father; and you can't—

N.T., 1/11/21, at 85-86 (bold added).

Appellant claims the bolded portion of D.M.'s mother's trial testimony *supra* suggested to the jury that the instant allegation was the first time D.M. made accusations of molestation against a person to whom D.M.'s mother was married; however, this testimony "cannot be true according to [D.M.'s

mother's] prior statements." Appellant's Brief at 30. Thus, he claims the trial court erred in preventing him from impeaching D.M.'s mother with prior statements regarding D.M's accusations of molestation against her first husband (D.M.'s biological father).

We agree with the trial court that defense counsel's question to D.M.'s mother about whether this was "the first time" D.M. made allegations of molestation was ambiguous. That is, the premise underlying Appellant's claim is flawed.

Appellant's claim is premised on his assertion that D.M.'s mother was asked "point blank" whether this was the first time D.M. accused one of her husbands of molestation. Appellant's Brief at 29. However, we agree with the trial court that, due to the ambiguous nature of defense counsel's question, D.M.'s mother reasonably understood defense counsel's question to relate to whether this was "the first time" D.M. made accusations against Appellant, to whom D.M.'s mother was married. Accordingly, Appellant has not demonstrated the necessity of impeachment evidence in this regard, and he is not entitled to relief. **See Largaespada**, **supra** (holding scope of cross-examination is within discretion of trial court, which may limit cross-examination that is confusing or misleading to the jury).

In his fourth issue, Appellant phrases his claim as whether the trial court erred in denying Appellant's "witnesses and evidence under the Rape Shield

[Law] where any prejudice was far less than the probative value[.]" Appellant's Brief at 30.

Initially, we note the Commonwealth advocates for this Court to find the issue waived under Pa.R.A.P. 1925(b). **See** Commonwealth's Brief at 22-23. Further, the trial court suggests this Court should deem the issue to be waived under Pa.R.A.P. 1925(b). Specifically, the trial court indicated in its opinion:

> The [trial] court…cannot address [Appellant's] fourth issue because he does not name the witnesses or the evidence that [Appellant] proposed to call. The only witness called by [Appellant] was the victim's mother[.] [Defense] [c]ounsel cross-examined her but did not attempt to call any other witnesses.

Trial Court Opinion, filed 8/19/21, at 3.

Here, Appellant presented the following issue in his Rule 1925(b) statement: "Whether the trial court erred/abused its discretion to deny Defendant's witnesses and evidence were [*sic*] any prejudice was far less than the probative value?" Pa.R.A.P. 1925(b) Statement, filed 7/29/21, at 4. We agree with the trial court that the issue is vague in that it does not identify what witnesses or evidence the trial court allegedly "denied." Appellant's vague issue prevented the trial court from meaningfully reviewing the claim in its Rule 1925(a) Opinion. **See Reeves**, **supra**.

In any event, we note Appellant attempts to refine his claim in his appellate brief and specifies defense "[c]ounsel was not permitted to ask [Appellant] if D.M. had a grudge against him." Appellant's Brief at 31. Our review of the record confirms that, while Appellant testified during his first

jury trial, which resulted in a mistrial, he did not testify during his second jury trial. Simply put, Appellant has not cited to the record or otherwise explained when counsel sought to ask (or was prevented from asking) "Appellant if D.M. had a grudge against him" during his second jury trial. *Id.*

Moreover, we note Appellant has not explained how the probative value of this evidence outweighed the likelihood of unfair prejudice. *Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.2d 75, 88 (2004) ("Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice.") (citations omitted)). As the Commonwealth notes in its brief, "Appellant repeating that the probative value of…evidence outweighs its prejudicial impact does not make it so." Commonwealth's Brief at 23. Rather, Appellant must explain how the probative value of his proffered evidence outweighed the danger of unfair prejudice. *Boczkowski*, *supra*. We conclude Appellant failed to do so.

Moreover, we note that, as it pertains to the probative value/prejudice test, Appellant asserts defense counsel should have been permitted to ask Appellant if D.M. had a grudge against him since "the probative value far outweighed the dangers of prejudice to D.M." Appellant's Brief at 31. D.M., who was the victim in this case, was not on trial, thus Appellant has mistakenly

referenced whether there was a danger of prejudice to D.M. Accordingly, we conclude Appellant is not entitled to relief.

In his fifth issue, Appellant claims that, due to his indigent status, the trial court abused its discretion in denying his request for an expert witness to assist with the scientific evidence. Specifically, Appellant contends (verbatim):

> The sole piece of forensic testimony was the genital swab of D.M. Due to the delay in D.M. having a SANE evaluation, any potential DNA evidence was lost. Trial Transcript.[6]
>
> [D.M.'s mother] allowed D.M. to shower after these allegations were disclosed to her, further disposing of any evidence. *Id.* In reviewing scientific literature, the existence of seminal fluid without sperm could be found in adolescent teen boys. According to the [*sic*] Ms. Gordner, the P-30 protein could be found in female urine, breast milk, and men who are infertile or have had a vasectormy [*sic*]. Trial Transcript, 12/10/21, p. 55. [Appellant] has a biological child. *Id.* at 80. Due to the allegations against Z.M., and the fact there is [*sic*] two teenage boys living in the residence, an expert was requested to address this forensic evidence.

Appellant's Brief at 33 (footnote added).

Initially, we note that, in developing his claim that a defense expert witness would have assisted him with the scientific evidence, Appellant points this Court to "Trial Transcript 12/10/21[.]" *Id.* To the extent Appellant is directing our attention to his first jury trial, which occurred from December 2-3, 2019, and resulted in a mistrial, we find he is not entitled to relief.

---

[6] Appellant did not provide a citation to a trial transcript but merely noted "trial transcript." Appellant's Brief at 33.

To the extent Appellant is directing our attention to his second jury trial, which occurred from January 11-12, 2021, we conclude Appellant is not entitled to relief.

Appellant baldly asserts a defense expert witness would have assisted the jury in understanding that the P-30 protein found in the seminal material from D.M.'s genital swab could have been produced by a teenage boy (*i.e.*, D.M.'s brother).[7] However, aside from indicating he "reviewed scientific literature," Appellant has not identified an expert who would have been willing to offer such testimony. Appellant's Brief at 33.

Moreover, the trial court advised defense counsel that he was permitted to ask the Commonwealth's expert witness whether teenage boys could be a possible source of the P-30 protein, but defense counsel declined to do so. Also, as the trial court indicates, "the Commonwealth's experts…helped [Appellant's] case because they readily acknowledged that there were multiple possible sources of the P-30 protein, other than [Appellant]." Trial Court Opinion, filed 8/19/21, at 3. **See Commonwealth v. Hairston**, 624 Pa. 143, 84 A.3d 657 (2014) (holding error is harmless if it did not prejudice the defendant or the prejudice was *de minimis*). Thus, we find Appellant is not entitled to relief.

---

[7] Ms. Gober testified that "P-30 is [a] prostate specific antigen[.]" N.T., 1/11/21, at 110.

In his sixth issue, Appellant claims the trial court erred in prohibiting him from introducing a self-authenticating expert document. Specifically, he avers the trial court should have permitted the introduction of "*Semen Characteristics in Pubertal Boys* by Z. Janczewski and L. Bablok[.]" Appellant's Brief at 34.

Initially, we note:

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus[,] our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa.Super. 2012).

Generally, two requirements must be satisfied for a document to be admissible: it must be authenticated, and it must be relevant. In other words, a proponent must show that the document is what it purports to be and that it relates to an issue or issues in the truth determining process.

*Commonwealth v. Brooks*, 508 A.2d 316, 318 (Pa.Super. 1986). *See* Pa.R.E. 901(a) (providing that "[u]nless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). The establishment of those two requirements is known as laying a foundation. *See Brooks*, *supra*.

As Appellant suggests, under Pa.R.E. 902, some types of documents do not require extrinsic evidence of authenticity because they are self-

- 21 -

authenticating. ***See*** Pa.R.E. 902 (listing types of evidence that are self-authenticating, or "require no extrinsic evidence of authenticity in order to be admitted").

In the case *sub judice*, in his one-page argument, Appellant suggests his "expert document" meets the requirements for being a "self-authenticating document" under Pa.R.E. 902. Appellant's Brief at 34. However, Appellant has not explained which subsection of 902, or which category of evidence, his "expert document" falls.

In any event, we note that, even if Appellant established his "expert document" meets the requirements of being self-authenticating evidence under Pa.R.E. 902, he would still be required to establish the "expert document" is relevant, as well as that the probative value of the evidence is outweighed by the danger of unfair prejudice. ***See Brooks***, ***supra***.

As this Court has held:

> Relevance is the threshold for admissibility of evidence. Pennsylvania Rule of Evidence 401 provides as follows:
>
> **Rule 401. Test for Relevant Evidence**
>
> Evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.
>
> Pa.R.E. 401. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may

exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

*Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*) (citation, quotation, and quotation marks omitted) (bold in original).

In the case *sub judice*, Appellant baldly avers his "expert document" would have "assist[ed] the defense in the cross-examination of [the] state police expert[.]" Appellant's Brief at 34. However, Appellant has not identified which state police expert to which he is referring or explained in what manner the "expert document" would have assisted him. Simply put, Appellant has failed to explain how the proffered "expert document" was relevant. *See Tyson*, *supra*. Further, he has developed no argument as to whether the probative value of the evidence outweighed the potential for unfair prejudice. *See id.* Thus, we conclude he is not entitled to relief on this claim.

In his seventh issue, Appellant claims the trial court erred in submitting redacted transcripts of Appellant's police interview to the jury. He contends:

> The redacted portion of the transcript included [Appellant's] statements that D.M. may have had a grudge against him. At one point, the transcript redacts Officer Stroup's question of [Appellant], but [it] does not redact [Appellant's] answer.
>
> ***
>
> In the present case, [A]ppellant challenges the completeness and accuracy of the transcript. Appellant avers this procedure was improper and was an abuse of discretion by the trial court.

Appellant's Brief at 35.

Initially, we note Appellant has not explained the circumstances under which a transcript of his redacted police interview was allegedly submitted to the jury.[8] Further, Appellant has not cited to any portion of a transcript; but rather, he suggests "at one point" the transcript redacts a police question while indicating Appellant's answer. *Id.*

In any event, assuming, *arguendo*, the police question should not have been redacted, Appellant has failed to explain how he was prejudiced by the jury receiving evidence that Appellant believed "D.M. may have had a grudge against him." *Id.* Thus, Appellant is not entitled to relief.

In his eighth issue, Appellant claims the trial court erred in permitting the jury to have access during deliberations to the transcript containing portions of Appellant's redacted interview with the police. Appellant asserts "jurors were permitted access to the redacted transcript during deliberations as [a] copy of the transcript was seen on the court benches after the jury had delivered their verdict." *Id.* at 36. "Appellant avers the jury had a written transcript and used this transcript during deliberation." *Id.* Appellant suggests the trial court improperly gave jurors access to the transcript in violation of Pa.R.Crim.P. 646(C)(2) pertaining to written confessions.

Pennsylvania Rule of Criminal Procedure 646 relevantly provides the following:

---

[8] To the extent Appellant contends transcripts were submitted to the jury during deliberations, we address that issue *infra*.

**Rule 646. Material Permitted in Possession of the Jury**

(A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).

\*\*\*

(C) During deliberations, the jury shall not be permitted to have:

\*\*\*

(2) a copy of any written or otherwise recorded confession by the defendant[.]

Pa.R.Crim.P. 646(C)(2) (bold in original).

Here, in addressing Appellant's claim, the trial court indicated the following:

[Appellant] claims that the court erred when it permitted jurors to have access to redacted transcripts during deliberations. However, the court did not send the transcripts to the jury for use during deliberations, which were conducted in the courtroom. The trial took place during the COVID-19 [pandemic], and to comply with [state social distancing] guidelines, the jurors sat in the courtroom during the trial and deliberations. The transcripts were in the courtroom, but at no time were they used by the jurors during deliberations.

Trial Court Opinion, filed 8/19/21, at 4.

We conclude Appellant has not demonstrated the trial court violated Pa.R.Crim.P. 646(C)(2). While Appellant contends the jury was given "permitted access" to a transcript[9] since it was stored in the same courtroom where the jury deliberated, there is no indication the trial court gave the jury permission to use the transcript. Notably, Appellant has provided no citation

---

[9] We shall assume, *arguendo*, the transcript at issue contained Appellant's "written confession" as set forth in Rule 646(C)(2).

- 25 -

to the record in this regard, and the trial court specifically indicated in its opinion that no such permission was granted.

Further, as to whether the jury used the transcript during deliberations without the trial court's permission, Appellant's argument is based on speculation and conjecture. Notably, Appellant has not cited to any portion of the record where he objected on this basis or made any inquiry of the trial court as to whether jurors used the transcript during deliberations. The trial court indicated in its opinion that the jurors did not use the transcript. Thus, absent any factual substantiation of Appellant's claim, we conclude he is not entitled to relief. *See Commonwealth v. Bond*, 572 Pa. 588, 819 A.2d 33 (2002) (rejecting claim where the appellant offered only speculation in support of his claim of error).

In his ninth issue, Appellant contends the evidence was insufficient to sustain his convictions for rape of a child and aggravated indecent assault.[10] He specifically contends the evidence was insufficient since there was no evidence that penetration occurred and "[w]ithout a finding of penetration,

---

[10] In his "Statement of Questions Involved," Appellant indicates he is challenging the sufficiency of the evidence as to all of his convictions, and he lists particular sub-issues. *See* Appellant's Brief at 15. However, in the argument portion of his brief, he narrows his sufficiency argument to challenge solely his convictions for rape of a child and aggravated indecent assault (victim less than 13 years old) based on an alleged lack of evidence of penetration. *See id.* at 36-37.

- 26 -

[Appellant's] conviction for rape of a child and aggravated indecent assault should be vacated." Appellant's Brief at 37.

A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

Our Supreme Court also has instructed:

[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated, and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

Section 3121(c) of our Crimes Code defines rape of a child as follows: "A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3121(c). Sexual intercourse is defined as follows: "In addition to its ordinary meaning, [sexual intercourse] includes

intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101. This Court has held: "A rape victim's uncorroborated testimony to penal penetration is sufficient to establish sexual intercourse and thus support a rape conviction." **Commonwealth v. Wall**, 953 A.2d 581, 584 (Pa.Super. 2008).

Section 3125 of our Crimes Code defines aggravated indecent assault as follows:

> A person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:…(7) the complainant is less than 13 years of age[.]

18 Pa.C.S.A. § 3125(a)(7).

Here, as indicated *supra*, Appellant challenges whether there was sufficient evidence of "penetration" so as to support a finding of "sexual intercourse" under Section 3121(c) and "penetration" under Section 3125(a)(7).

In establishing that "penetration" occurred, the Commonwealth presented the testimony of the victim, D.M., who relevantly testified as following on direct examination by the assistant district attorney:

Q: And what would happen once he was alone—once he had you alone behind the locked doors?
A: He would tell me to take my clothes off and like bribe me into doing it, like say he'll give me a soda after.
Q: Did he take his clothes off?
A: Yes, just his pants.

Q: Did he take his underwear off?

A: No.

Q: What did he do after that?

A: He would lay me down on the bed and then lay on top of me.

Q: Would you be on your back or your stomach on the bed?

A: On my back.

Q: What did he do once you were on your back on the bed?

A: (No response).

Q: Where would his body be in relation to your body?

A: Like stomach to stomach.

Q: Would be he standing up or doing something else?

A: He would be laying on top of me.

Q: And while you were stomach to stomach, what did he do?

A: He tried to put the part he pees out of in the part that I pee out of.

Q: Did he succeed in doing this?

A: Sometimes, yes.

Q: How did that make you feel?

A: Uncomfortable.

Q: Was it painful?

A: Yes.

N.T., 1/11/21, at 44-45.

We conclude the jury was free to believe D.M.'s testimony and find that Appellant put his penis into D.M.'s vagina. **Ratsamy**, **supra**. Thus, the evidence sufficiently established "penetration" occurred to establish "sexual intercourse" for purposes of Sections 3121(c), as well as "penetration, however slight" of the victim's genitals for purposes of 3125(a)(7). Accordingly, there is no merit to Appellant's sufficiency of the evidence claim.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2022